Steven J. **KELLEY**, Plaintiff–Appellee,

v.

Robert G. **BORG**, Defendant–Appellant.

No. 94–15422.

United States Court of Appeals,
Ninth Circuit.

Submitted March 17, 1995 *.

Decided July 28, 1995.

---

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Antonia D. Radillo, Deputy Atty. Gen., Sacramento, CA, for defendant-appellant.

Steven J. Kelley, pro se, Represa, CA, for plaintiff-appellee.

Before NORRIS, WIGGINS, and FERNANDEZ, Circuit Judges.

WIGGINS, Circuit Judge:

### OVERVIEW

On June 24, 1987, Steven Kelley was an inmate at Folsom Prison, in the Security Housing Unit. The unit was in a lockdown state. Workers from Lawson Mechanical Contractor ("Lawson") were working on the air supply ducts. Kelley complained to California Department of Corrections ("CDC") Officers Hudson and Ferryance that fumes were entering his cell, and requested that they let him out. The officers responded that they were physically unable to do so, and that they needed permission from their Lieutenant (Hickman). Approximately five minutes later Kelley pounded on his cell again, and asked to be let out. Ferryance apparently yelled to Hudson to ask whether Kelley could be let out, and Hudson respond-

ed that Hickman had ordered that all the inmates must remain in their cells. Kelley told Ferryance that the fumes were killing him, but he was not released. Shortly thereafter, Kelley became unconscious and was taken to the infirmary.[1]

Kelley brought a 42 U.S.C. § 1983 action against Officers Hudson, Ferryance, and Hickman, as well as the contractor, Lawson. Lawson subsequently settled with Kelley, and on August 4, 1992, Kelley and the CDC officers consented to proceed before a magistrate judge. The magistrate judge ordered the production of a report from a neurologist unaffiliated with the CDC. Based upon that report, the magistrate judge found that the fumes did not cause Kelley to have a seizure or suffer long-term adverse health effects, as he originally had claimed.

The magistrate judge concluded that an Eighth Amendment claim still existed, however, based on the passage of time from Kelley's first complaint to the officers until the time that he lost consciousness. Accordingly, he denied Appellants' motion for summary judgment. He also ruled that the CDC officers are not entitled to qualified immunity. The officers filed a motion for reconsideration, which the magistrate judge granted. On February 9, 1994, the magistrate judge denied the officers' subsequent motion for summary judgment. The officers filed an interlocutory appeal from that order. We have jurisdiction pursuant to the collateral order doctrine and 28 U.S.C. § 636(c)(3), and we affirm.

## ANALYSIS

I. *Qualified Immunity*

a. *Appellants Need Not Admit Guilt to Assert This Defense.*

■ As a threshold matter, Appellants are correct that the magistrate judge was mistaken when he stated that "[f]or defendants to rely on a qualified immunity defense, defendants would first have to admit that they in fact violated this clearly established constitutional right." Quite the contrary, defen-

dants need not admit that plaintiff's factual allegations are true in order to assert this defense. The very heart of qualified immunity is that it spares the defendant from having to go forward with an inquiry into the merits of the case. Instead, the threshold inquiry is whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established. The right itself is the matter of discussion, not whether that right was in fact violated. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

■ Despite this erroneous statement in his order, however, the magistrate judge ultimately conducted the proper inquiry for a qualified immunity examination: He ruled that the right allegedly violated was clearly established, and that accordingly the qualified immunity defense does not apply. We agree.

b. *The Right Allegedly Violated Was Clearly Established.*

■ The qualified immunity test requires the following three steps: (1) identification of the specific right allegedly violated; (2) determination of whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Appellants argue that they should have been granted qualified immunity because the second, "clearly established," prong of the test has not been met.

The magistrate judge in this case held that the right allegedly violated was a prisoner's right, under the Eighth Amendment, to have prison officials not be "deliberately indifferent to serious medical needs." C.R. 230, at 4 (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). He further found that this right was clearly established. Appellants argue that the magistrate judge defined the right too broadly.

---

**1.** We assume these facts to be true for purposes of this disposition. We do not intend to preclude

a different determination after the evidence has been fully developed.

They believe that the proper characterization of the right at issue is: "[D]id plaintiff, after complaining about foul smells, have a clearly established right, then or now, for defendant correctional officers to immediately remove him from his cell in the Security Housing Unit during a lock down, when they first were required to at least inform their superior officer that they needed to remove an inmate, be it any inmate, from his cell?"

█ We believe that the magistrate judge correctly defined the right at issue. Appellants "misapprehend the level of generality at which a law must be clearly established." *Camarillo v. McCarthy*, 998 F.2d 638, 640 (9th Cir.1993). Appellants are correct that broad rights must be particularized before they are subject to the clearly established test. In *Camarillo*, for example, an HIV-positive prisoner argued that being segregated from the general prison population violated his First Amendment freedom of association rights. The court ruled that the proper inquiry was not whether the First Amendment was clearly established; it was whether "inmates are entitled to be free from prison regulations that restrict their association with members of the general prison population." *Id.* at 640. Likewise, as the *Camarillo* court noted, due process violations must be particularized before they can be subjected to the clearly established test. *Id.* What Appellants fail to realize, however, is that the right at issue in the present case *has already been particularized.*

█ The magistrate judge did not ask whether the Eighth Amendment generally is clearly established. He asked whether Eighth Amendment rights *in the prison medical context* are clearly established. And he correctly found that they are. Under the Eighth Amendment, prisoners have a right to officials who are not "deliberately indifferent to serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. at 292. To hold that the magistrate judge should have defined the right at issue more narrowly, and included all the various facts that Appellants

recited in their proposed definition, would be to allow Appellants, and future defendants, to define away all potential claims.[2]

## II. *The Magistrate Judge's Jurisdiction*

█ Appellants argue that the magistrate judge no longer has jurisdiction over the case, because he "found a lack of an injury in fact." Accordingly, there remains no "case or controversy" for resolution. *See* U.S. Const., art. III, § 2. This argument warrants little discussion. The magistrate judge clearly and repeatedly explained that although he accepted Appellants' argument that the fumes and caulking did not cause Kelley to have a seizure or suffer any long-term health consequences, he believed there was a material question of fact as to whether the fumes or caulking rendered him unconscious or caused other unpleasant effects:

> Th[is] court found that "the fumes that entered plaintiff's cell did not cause him to have epilepsy or any other long term negative effects." ... However, the court did not find, as defendants argued in their Request for Reconsideration ... that the fumes did not make plaintiff become unconscious or experience unpleasant effects. The court was careful to make a distinction between the alleged seizure and the apparent unconsciousness.

Order Denying Summary Judgment at 4–5. Although the district court may well find that any damage that Kelley suffered was minimal, it is inarguable that knocking someone unconscious constitutes an injury. Accordingly, there is clearly a case or controversy before the lower court.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court. As to Appellants' request that this court inform them of what issues remain to be resolved at the district court level, we believe that the magistrate judge made this perfectly clear. One question is whether Appellants were deliberately indifferent to Kelley's medical

---

**2.** Moreover, Appellants' recitation of various facts indicating that there was no underlying violation is not relevant to the issue before the panel. That evidence will be considered by the magistrate judge when he applies the facts of this case to the standard of care enunciated by the Supreme Court in *Estelle.*

needs. The other is whether the fumes rendered Kelley unconscious, causing him to suffer unpleasant effects.

AFFIRMED.