73 F.3d 369
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Barbara M. MORGAN, personal representative of the Estate of
Dennis Lee Morgan, Deceased, Plaintiff-Appellant,
v.
Manfred MAASS, Superintendent; Charles S. Reese; Michael
H. Yoder, Trung Van Tran; Christine Cilley, et
al., Defendants-Appellees.
 No. 94-35834.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 14, 1995.
Decided Dec. 26, 1995.
 
 Before: BROWNING, RYMER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We review a grant of summary judgment de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact. Id. The district court's decision to consider evidence in the context of summary judgment is reviewed for an abuse of discretion. Maffei v. Northern Ins. Co. of N.Y., 12 F.3d 892, 897 (9th Cir.1993).
 
 
 3
 1. Admissibility of Morgan's statements to the appellant
 
 
 4
 The defendants argue that the alleged statements made by Morgan to the appellant in the hospital are inadmissible. We disagree.
 
 
 5
 First, Morgan's statements to the appellant fall within the Fed.R.Evid. 804(b)(2) exception to the hearsay rule. The appellant stated that Morgan discussed his death with her at the hospital and "said that he was prepared to go 'to the other side,' which is a reference he used to describe a spiritual afterlife." Thus, the impending death requirement of Rule 804(b)(2) is met. The alleged statements concern the circumstances of Morgan's death, e.g., whether he was given prompt medical attention. Thus, Rule 804(b)(2)'s requirement that the statements concern the circumstances of what the declarant believed to be impending death is met.
 
 
 6
 Second, the statements which constitute hearsay within hearsay fall within an exception to the hearsay rule as required under Fed.R.Evid. 805.
 
 
 7
 Morgan's statement that he told the guard at 4:00 a.m. that he was vomiting blood and needed to go to the hospital is not hearsay since the statement was offered not to prove the truth of the matter asserted, but only to prove that Tran was notified at that time. See Fed.R.Evid. 801(c). Thus, the district court did not abuse its discretion in considering this statement for the limited purpose of determining whether Tran had notice.
 
 
 8
 Morgan's statement that Tran told him to wait until sick line is also not hearsay because it is Tran's own statement being offered against Tran and is thus an admission by a party-opponent. See Fed.R.Evid. 801(d)(2). This statement is therefore admissible, and the district court did not abuse its discretion in considering the statement.
 
 
 9
 As to the use of Morgan's statements as evidence that Morgan was actually sick at 4:00 a.m., it is not clear that the district court even considered Morgan's statements for this purpose. In addition, there is other evidence in the record which indicates that Morgan was sick at 4:00 a.m. (e.g., Morgan's statement to Cilley that he had been sick since 4:00 a.m. and the hospital records that state that Morgan had been sick since 4:00 a.m.). Therefore, even if the district court did find that Morgan was sick at 4:00 a.m., there is other evidence from which this conclusion could have been drawn, and therefore it cannot be said that the district court abused its discretion.
 
 2. Liability of Tran[1]
 
 10
 The district court found that because there was no evidence that Morgan would have lived had he received more prompt medical attention, any delay in receiving medical treatment that may have occurred due to Tran's acts or omissions did not harm Morgan. This finding is erroneous.
 
 
 11
 To find that a jailer can leave an inmate bleeding internally in his cell for over five hours, assuming that he is going to die anyway at the exact same moment he otherwise would have died, violates the "evolving standards of decency that mark the progress of a maturing society" and therefore violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976).
 
 
 12
 Furthermore, the pain, mental anguish and suffering that Morgan endured during the five hours after he allegedly told Tran that he needed to go to the hospital is more than sufficient to constitute sufficiently serious harm. See Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.1986) (extreme discomfort and pain suffered by an inmate due to a delay in surgery stated a serious medical need); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992) (delay of treatment that caused a prisoner to suffer a significant amount of pain and anguish caused "harm" upon which a Sec. 1983 action could be based); Kelley v. Borg, 60 F.3d 664, 667 (9th Cir.1995) (unpleasant effects suffered by an inmate rendered unconscious due to exposure to fumes was enough to state a Sec. 1983 claim even if the prisoner only suffered minimal damage). Therefore, the delay in medical treatment that allegedly resulted from Tran's conduct resulted in substantial harm to Morgan.
 
 
 13
 Finally, Tran's claimed conduct appears to constitute deliberate indifference to Morgan's serious medical needs. Morgan told Tran that he was vomiting blood and needed to go to the hospital at 4:00 a.m. Tran responded by telling Morgan to wait until sick line, which was not until 9:30 a.m. This raises at least a material issue of fact as to whether Tran's conduct constitutes deliberate indifference.
 
 
 14
 Tran argues that the appellant contradicts herself as to whether Morgan told Tran that he was vomiting blood and bleeding rectally. This argument lacks merit.
 
 
 15
 At her deposition, the appellant testified that Morgan told her "that he had tried to get them to take him to the hospital at about 4:30 that morning and that they told him to wait until sick line, which was around 9:30." The appellant also stated, "He said that he had been throwing up blood." Later in the deposition, the appellant stated that Morgan told her that "he had thrown up blood and that he had asked for help--asked them to take him to the hospital specifically at 4:00 or 4:30, and they told him to wait until sick line." Appellant was never specifically asked whether Morgan told the guard that he was vomiting blood.
 
 
 16
 In her affidavit, appellant stated that "[a]t 4:00 a.m., he said he told the guard who came by his cell that he was vomiting blood and that blood was in his bowel movements. He said the guard told him to wait until the sick line later in the morning."
 
 
 17
 Looking at her deposition as a whole, and at her affidavit, the appellant's versions of what Morgan stated to her are not inconsistent.
 
 
 18
 Because there is a material issue of fact as to whether Tran acted with deliberate indifference to Morgan's serious medical needs, the district court erred in granting Tran's motion for summary judgment.
 
 3. Liability of Yoder
 
 19
 Yoder argues that the appellant failed to show that he acted with "deliberate indifference" to Morgan's medical needs. We agree.
 
 
 20
 "In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence...." Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990). Prison officials act with deliberate indifference if they purposefully ignore or fail to respond to a prisoner's medical needs. McGuckin, 974 F.2d at 1060.
 
 
 21
 In the present case, once Yoder was informed of the medical emergency, he responded immediately by going up to Morgan's cell. Yoder testified that when he first saw Morgan, "He looked sick, but not overly sick. Not like, he didn't appear to be in medical distress or dying." Upon reaching the cell, Yoder asked Morgan whether he would be able to make it to the infirmary in a wheel chair, and Morgan said, "Yes." Yoder immediately contacted Health Services and explained the situation, attempting to get Morgan to the infirmary. Only when a nurse arrived on the scene approximately thirty minutes later was Yoder made aware that Morgan would need to be sent to the hospital instead of the infirmary. Yoder immediately made arrangements for an ambulance to take Morgan to the hospital.
 
 
 22
 The gist of appellant's claim against Yoder comes down to whether Yoder should have called an ambulance instead of trying to get Morgan to the infirmary. Based on the evidence, it is clear that Yoder did not believe that Morgan was in any immediate danger. He was attempting to secure medical treatment for Morgan, and when he was told that Morgan needed to be transported to the hospital, Yoder immediately made arrangements for an ambulance.
 
 
 23
 Because Yoder was attempting to get some type of medical help for Morgan, he was not "purposefully" ignoring or failing to respond to Morgan's medical needs and was thus not acting or failing to act with deliberate indifference. See McGuckin, 974 F.2d at 1060. Furthermore, although Yoder's failure to recognize the situation as a true emergency and immediately call an ambulance may have been negligent, "it did not rise to the level of deliberate indifference." Wood, 900 F.2d at 1334. Therefore, we hold that the district court did not err in granting summary judgment for Yoder.
 
 4. Liability of Dr. Vargo
 
 24
 The appellant argues that Dr. Vargo's failure, as the prison doctor, to make jailers aware that Morgan was as sick as he was, and that he could experience such a catastrophic and fatal bleeding episode, constituted deliberate indifference to Morgan's serious medical needs. We disagree.
 
 
 25
 Deliberate indifference in the medical context goes well beyond negligence because it is the "unecessary and wanton infliction of pain" which the Eighth Amendment proscribes. See Estelle, 429 at 105-06. "While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." Wood, 900 F.2d at 1334.
 
 
 26
 In Oritz v. City of Imperial, 884 F.2d 1312, 1313 (9th Cir.1989), the prisoner had fallen and injured his head. Because of the emergency component of complications that could arise from a head injury, the treating doctor gave the prison officials a Patient After Care Sheet which listed the symptoms that would be displayed by the prisoner if complications arose, and directed the prison officials to immediately take the prisoner to a doctor or emergency room if any of the listed symptoms occurred. Id. When the prisoner began to exhibit the symptoms listed on the sheet, the prison officials failed to call the emergency room or the doctor. Instead, they called another doctor who prescribed sedatives for the prisoner over the phone. Id. These sedatives were inappropriate for head injuries. Two days after the initial fall, the prisoner was found unconscious. He was taken to the hospital where he died ten days later. Id. This court held that because the prison officials had ignored evidence of the complications to which they had been specifically alerted and had prescribed sedatives which were contraindicated without an examination, a material issue of fact existed as to whether the prison officials had acted with deliberate indifference. Id. at 1314.
 
 
 27
 In contrast, in the present case, there was no emergency component to Morgan's illness or to what Dr. Vargo knew at the time. Morgan's medical condition had been unchanged for some period of time prior to May 6, 1991. The emergency situation could happen, but there is no evidence that it was imminent. Morgan had been educated regarding the processes of his illness and was capable of expressing himself, as he apparently did here. Thus, there was no apparent need to alert the staff of Morgan's medical condition.
 
 
 28
 Furthermore, the appellant has not presented any evidence which raises a material issue of fact as to whether Dr. Vargo acted with deliberate indifference. There is no evidence that Dr. Vargo provided inadequate medical care, much less that the quality of care he provided was so dismally beneath the prevailing standard of care that it supports an inference that Dr. Vargo acted with deliberate indifference. We therefore hold that the district court did not err in granting summary judgment for Dr. Vargo.
 
 
 29
 In conclusion, we affirm the district court's grant of summary judgment for Dr. Vargo and Yoder, but reverse the district court's grant of summary judgment for Tran.
 
 
 30
 AFFIRMED in part, REVERSED in part and REMANDED. No costs allowed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The factual statements made concerning the conduct of Tran result from viewing the record in the light most favorable to Morgan. We are not holding that Tran or Morgan actually conducted themselves as we describe. Those factual determinations must await a trial