79 F.3d 115
 96 Cal. Daily Op. Serv. 1656, 96 Daily Journal
D.A.R. 2810
Terry F. NEWELL, Plaintiff-Appellee,
v.
Frank SAUSER; Lou Easter; Sharon Starr, Sgt., Disciplinary
Committee Chairperson; Tom Reimer, Sgt.; Robert Hartzler,
Officer of the Spring Creek Correctional Center; in their
individual and official capacities, Defendants-Appellants.
 No. 94-35243.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 12, 1995.
Decided March 11, 1996.
 
 John K. Bodick, Assistant Attorney General, Anchorage, Alaska, for defendants-appellants.
 Susan Orlansky, Young, Sanders & Feldman, Anchorage, Alaska, for plaintiff-appellee.
 Appeal from the United States District Court for the District of Alaska, John W. Sedwick, District Judge, Presiding.
 Before: EUGENE A. WRIGHT, Senior Circuit Judge, POOLE and WIGGINS, Circuit Judges.
 EUGENE A. WRIGHT, Senior Circuit Judge:
 
 
 1
 Newell is an inmate in an Alaska state correctional center. He sued prison officials, alleging that they violated his civil rights by confiscating legal materials from his cell. The district court ruled that the officials were not entitled to assert a qualified immunity defense. They filed an interlocutory appeal.[1] We affirm.
 
 I. Background
 
 2
 Newell was a prison law librarian. He kept a computer in his cell, as all inmates were permitted to do. In March, 1989, prison guard Hartzler entered his cell and seized 59 pages of computer-generated, rough-draft legal materials that Newell had written on behalf of another inmate.
 
 
 3
 Hartzler filed an incident report indicating that Newell had violated prison regulation 22 AAC 05.400(d)(7), which proscribes possessing "anything not authorized for retention or receipt by the prisoner, and not issued through regular facility channels." The prison's disciplinary committee found Newell guilty and gave him a verbal reprimand. The infraction became part of his record, which is subject to parole board review.
 
 
 4
 Newell appealed the reprimand, arguing that the disciplinary action violated his First Amendment and due process rights. After exhausting his state remedies, he filed this section 1983 claim. On cross-motions for summary judgment, the district court held that the prison officials were not entitled to qualified immunity.
 
 II. Discussion
 
 5
 We review de novo a district court's decision on qualified immunity in a section 1983 action. Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993).
 
 
 6
 The qualified immunity doctrine protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Analysis of a claim of qualified immunity entails three steps: "(1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue." Alexander v. City of San Francisco, 29 F.3d 1355, 1363-64 (9th Cir.1994), cert. denied sub nom. Lennon v. Alexander, --- U.S. ----, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995).
 
 
 7
 Much depends "upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987). Newell claims that the prison officials infringed his due process right because he was disciplined without having violated any known policy or procedure.[2] The prison officials proffer a narrower definition: they argue prisoners have no clearly established right to possess other prisoners' legal materials.
 
 
 8
 "[D]ue process violations must be particularized before they can be subjected to the clearly established test." Kelley v. Borg, 60 F.3d 664, 667 (9th Cir.1995); see also Anderson, 483 U.S. at 639, 107 S.Ct. at 3038. Newell is specific: he does not allege merely that he has suffered a due process violation. Rather, he contends that the regulation, as applied to him in this context, is vague and failed to provide him with notice that his behavior was sanctionable. So construed, we find the "contours of the right" to be adequately defined. Anderson, 483 U.S. at 640, 107 S.Ct. at 3039.[3]
 
 
 9
 Having identified the right at issue, we must determine whether it was clearly established in 1989. To be clearly established, the law must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. It is not necessary that the alleged act have been previously declared unconstitutional, as long as the unlawfulness was apparent in light of preexisting law. Id.
 
 
 10
 It is clearly established, both by common sense and by precedent, that due process requires fair notice of what conduct is prohibited before a sanction can be imposed. In Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972), the Supreme Court said, "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." See also Williams v. Nix, 1 F.3d 712, 716 (8th Cir.1993) (noting that it is "axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed," and citing cases).
 
 
 11
 Other circuits have found violations of prisoners' due process rights on the grounds that a prison regulation did not provide adequate notice that the sanctioned conduct was prohibited.[4] For example, in Rios v. Lane, 812 F.2d 1032 (7th Cir.), cert. denied, 483 U.S. 1001, 107 S.Ct. 3222, 97 L.Ed.2d 729 (1987), the plaintiff, a prisoner, had transcribed and distributed information from an authorized newspaper. Prison officials sanctioned him for "disruptive conduct." The Seventh Circuit held that the defendants had violated Rios' clearly established due process right, citing the "continuing requirement that inmates be free to steer away from prohibited conduct, unentangled by the trappings of poorly delineated prison regulations." Id. at 1039. See also Adams v. Gunnell, 729 F.2d 362 (5th Cir.1984) (inmates should not have been sanctioned for violating regulation that was vague as applied to their circumstances).
 
 
 12
 Even if a constitutional violation has occurred, an officer will be immune from suit if he "objectively could have believed that his conduct was lawful." Act Up!, 988 F.2d at 871. "Whether or not a reasonable officer would have known that his or her conduct violated clearly established law 'is not in itself a factual issue that can preclude summary judgment.' " Alexander, 29 F.3d at 1364 (quoting Act Up!, 988 F.2d at 873).[5]
 
 
 13
 The regulation at issue prohibits possession of "anything not authorized for retention or receipt by the prisoner." A reasonable officer would have known that this general regulation did not give Newell adequate notice that his conduct was forbidden. Newell was designated as a law librarian; he was permitted to assist other inmates with their legal work. The prison allowed him to have a computer in his cell, which implies an attendant right to produce computer-generated documents. See Rios, 812 F.2d at 1038 (regulation gave prisoner no notice that "simple transcription of previously authorized information" was sanctionable). The logical inference in these circumstances is that Newell was entitled to use his computer to print, and necessarily to possess, draft legal papers. Nothing in the regulation suggests the contrary.[6]
 
 
 14
 The prison's response to this situation provides further evidence that its officers should have known their conduct was unlawful. The prison created a regulation specifically governing possession of other inmates' legal materials three weeks after the incident. The after-the-fact creation of a new regulation reinforces the conclusion that there was no policy in place at the time the papers were confiscated.
 
 III. Conclusion
 
 15
 Newell had a clearly established right to notice that his conduct was sanctionable. A reasonable officer would have known that seizing computer-generated legal papers from his cell was unlawful. The district court's decision that the prison officials were not entitled to qualified immunity is AFFIRMED.
 
 
 
 [1]
 Interlocutory appeal of denial of a claim of qualified immunity is permitted where, as here, the decision " 'turns on an issue of law.' " Johnson v. Jones, --- U.S. ----, ----, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995) (quoting Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985))
 
 
 [2]
 Newell also alleged that he had a clearly established First Amendment right to provide legal assistance to others in prison. Because we hold that the defendants violated his clearly established due process rights, we need not address the First Amendment issue
 
 
 [3]
 The prison officials' definition of the right is too narrow. Here, as in Kelley, the officials fail to acknowledge that "the right at issue in the present case has already been particularized." Kelley, 60 F.3d at 667 (emphasis in original). To accept their definition of the right at issue, "would be to allow appellants, and future defendants, to define away all potential claims." Id
 
 
 [4]
 There is no Ninth Circuit authority precisely on point; however, "in the absence of binding precedent, a court should look to whatever decisional law is available to ascertain whether the law is clearly established." Capoeman v. Reed, 754 F.2d 1512, 1514 (9th Cir.1985)
 
 
 [5]
 We find no genuine issue of fact that would deprive us of jurisdiction to decide the question or force us to remand for a factual determination. Cf. Carnell v. Grimm, 74 F.3d 977, 980 (9th Cir.1996)
 
 
 [6]
 The parties dispute the ownership of these papers. Newell insists that rough drafts of legal documents he was preparing for another inmate were his property until he gave them to his "client." Regardless of who owned the papers, prison regulations gave Newell no reason to believe that he could not possess them