**Ed KNOX, an individual,**
**Plaintiff–Appellee,**

v.

**SOUTHWEST AIRLINES, a Texas**
**corporation, Defendant,**

and

**David Swafford; Robert Hopper; City**
**of Phoenix, a municipality,**
**Defendants–Appellants.**

No. 96–16976.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1997.

Decided Sept. 5, 1997.

---

Robert L. Greer, Scott A. Alles, Kern and Wooley, Mesa, AZ, for defendants–appelllants.

Evan Haglund, Goodyear, AZ, Nicholas S. Hentoff, Phoenix, AZ, for plaintiff–appellee.

Before: HALL and WIGGINS, Circuit Judges and SHADUR, District Judge.*

WIGGINS, Circuit Judge:

After a dispute at Phoenix's Sky Harbor Airport, plaintiff Ed Knox was arrested by Phoenix police officers David Swafford and Robert Hopper on charges of trespassing and disorderly conduct. Knox sued Swafford, Hopper, and the City of Phoenix for violating his civil rights. The officers bring

* Hon. Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

this interlocutory appeal from the district court's denial of their motions for summary judgment based on qualified immunity. We hold that we have jurisdiction over the interlocutory appeal, and we affirm.

## BACKGROUND

We deal here with an incident that escalated into a regrettable confrontation-one that it would seem could readily have been avoided. Following a heated exchange between Knox and a Southwest Airlines employee at the Southwest counter at the Phoenix airport regarding Southwest's responsibility for damage to Knox's luggage, another employee called security. Swafford and Hopper responded. According to Knox, the officers flanked him as he went to retrieve his garment bag that was nearby. Knox stated that he refused to do business "under those terms." A verbal exchange between Knox and Swafford ensued; each now claims the other was not fully in control of himself. Pointing in the direction of the nearest exit, Swafford told Knox to leave if he was not going to conduct his business properly. Knox initially started that way, but turned around to head towards the center of the airport. Knox's car was parked on the opposite side of the airport, but he did not tell the officers this at the time. He did not return towards the Southwest counter. The officers followed him as he walked.

During the continuing verbal exchange with Swafford as he walked, Knox demanded Swafford's name and badge number. Knox took a piece of paper from the Information Booth in order to write down Swafford's identification. Swafford seized the paper, claiming that he recognized that it contained valuable records as part of the airport's daily log. Swafford, with Hopper's assistance, then arrested Knox because Knox refused to leave immediately and instead continued to criticize Swafford and demand his identification. He was taken to the Madison Street Jail and booked. Knox was ultimately released from custody and was never prosecuted.

Knox filed suit alleging violations of his civil rights and several related claims. The district court denied the officers' initial mo-

tion for summary judgment based on qualified immunity on July 25, 1996 ("July 25 order"). It stated,

> In the present action, the evidence of whether the officers had probable cause to arrest Knox for trespassing is a question of fact that is disputed by the parties. At this stage of the proceedings, the Court cannot conclude that probable cause existed as a matter of law. Thus, it is a question of fact to be determined by the jury.

The officers did not appeal this denial.

On August 23, 1996, defendants filed another motion for partial summary judgment based on qualified immunity "to supplement" their previous motion "in light of" the July 25 order, supplying as additional evidence an affidavit from Officer Swafford. On August 29, 1996, the court denied this motion, stating that "there is insufficient information before the Court to make a determination of qualified immunity at this time." Defendants ostensibly appealed from the denial of both motions by filing a notice of appeal on September 26, 1996.

## ANALYSIS

██ We review *de novo* a denial of summary judgment on qualified immunity. *Curnow v. Ridgecrest Police,* 952 F.2d 321, 323 (9th Cir.1991). Before we consider the merits of this appeal, we must address two threshold questions: (i) whether the officers' appeal was untimely because it arose from the denial of their second successive summary judgment motion and (ii) whether we have jurisdiction to decide the interlocutory appeal.

I. *Timeliness of the Appeal From the Denial of the Second of Two Motions for Summary Judgment*

██ Knox contends that we should dismiss the appeal on the grounds that it is untimely under Fed. R.App. P. 4(a)(1), having been filed more than thirty days after the July 25 order denying defendants' first motion for partial summary judgment on qualified immunity. We disagree. The notice of appeal from the August 29 denial of the second

motion was timely filed on September 26. We reject Knox's contention that successive motions for summary judgment on qualified immunity are impermissible. Defendants' failure to file a timely appeal of the July 25 order did not preclude an appeal from the August 29 order.

In *Behrens v. Pelletier,* — U.S. —, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), the Supreme Court held that there was no jurisdictional bar to successive interlocutory appeals of orders denying successive pretrial motions on qualified immunity grounds. *See also Marks v. Clarke,* 102 F.3d 1012, 1017 n. 8 (9th Cir.1996) (characterizing *Behrens* as allowing "two bites at the appellate apple," on a motion to dismiss and on summary judgment). In *Behrens,* the first motion was a motion to dismiss and the second was a motion for summary judgment. at —, 116 S.Ct. at 839. We recognize that *Behrens* did not expressly authorize an interlocutory appeal from each denial of successive motions for summary judgment or, more relevant here, an interlocutory appeal just from the denial of the second motion. Nevertheless, the reasoning in *Behrens* is consistent with the existence of appellate jurisdiction over an appeal from a second denial of a motion for summary judgment based on qualified immunity.

The Court held that the category of the underlying order determines whether the appeals court has jurisdiction to hear an interlocutory appeal. *Behrens,* at —, 116 S.Ct. at 841. In the context of qualified immunity, the denial of a summary judgment order entitles the defendants to an interlocutory appeal. *Id.* The strength of the appeal does not affect an appeals court's jurisdiction. *Id.* Courts can prevent potential abuse from defendant officials by establishing summary procedures to weed out frivolous or simply repetitive motions.[1] *Id.* at —, 116 S.Ct. at 841–42; *see also Enlow v. Tishomingo County,* 962 F.2d 501, 506–07 (5th Cir.1992) (stating that successive motions for summary judgment on an expanded record are permissible within the district court's discretion). It is not a matter of jurisdiction. We reject the jurisdictional challenge based on the er-

roneous argument that an interlocutory appeal from the denial of a successive motion for summary judgment is proper only if timely filed from the district court's decision on the first motion. Thus, we hold that the interlocutory appeal from the denial of the second motion was timely because it was filed within the required time following the district court's decision on that motion.

## II. *Jurisdiction Over the Interlocutory Appeal Based on a Question of Law Regarding a Violation of Clearly Established Law*

 Qualified immunity is immunity from suit, not just a defense to liability. *V–1 Oil Co. v. Smith,* 114 F.3d 854, 857 (9th Cir.1997). A district court's denial of qualified immunity on legal grounds is a final decision subject to interlocutory appeal. *Id.; Mitchell v. Forsyth,* 472 U.S. 511, 525–27, 105 S.Ct. 2806, 2814–16, 86 L.Ed.2d 411 (1985).

Knox nonetheless contends that we lack jurisdiction over this appeal. He argues that in *Johnson v. Jones,* 515 U.S. 304, 316–18, 115 S.Ct. 2151, 2158, 132 L.Ed.2d 238 (1995), the Supreme Court limited interlocutory appeals of denials of qualified immunity to "neat abstract issues of law," while the district court in this case found that there were disputed issues of fact for trial regarding the incident leading to his arrest. We do not agree that *Johnson* precludes this appeal.

In *Behrens,* the Court explained again under what circumstances a denial of summary judgment on qualified immunity is properly subject to an interlocutory appeal:

> *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly separable from the plaintiff's claim, and hence there is no final decision under [Supreme Court precedent]. *Johnson* reaffirmed that summary-judgment determina-

---

1. We see no evidence of such abuse in this case.

tions *are* appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity-typically, the issue whether a federal right allegedly infringed was clearly established.

*Behrens*, at ——, 116 S.Ct. at 842 (internal quotations and citations omitted).

■ Thus, we have jurisdiction over an interlocutory appeal from the denial of qualified immunity where the appeal focuses on whether the defendants violated a clearly established law given the undisputed facts, while we do not have jurisdiction over an interlocutory appeal that focuses on whether there is a genuine dispute about the underlying facts. *See Armendariz v. Penman*, 75 F.3d 1311, 1317 (9th Cir.1996) (en banc) ("[W]e have jurisdiction to review the district court's decision that the defendants' alleged conduct violated clearly established law, but the collateral order doctrine does not provide appellate jurisdiction to review the district court's decision that genuine issues of material fact exist for trial."). Even if disputed facts exist about what actually occurred, a defendant may still file an interlocutory appeal if the defendant's alleged conduct in any event met the standard of objective legal reasonableness under clearly established law regarding the right allegedly infringed. *See Behrens*, at ——, 116 S.Ct. at 842.

■ Defendants' motion for summary judgment presented the issue of whether the alleged conduct unreasonably violated a "clearly established" legal standard; it was not merely a challenge to the sufficiency of the evidence. Defendants claimed that the arrest did not violate clearly established law because they had, or reasonably believed they had, probable cause to believe Knox was violating Arizona's criminal trespass and disorderly conduct statutes. Thus, the district court's denial of defendants' summary judgment motion was subject to interlocutory appeal because the issue was whether a reasonable officer would know that his or her

alleged conduct violated clearly established law. In contrast, the defendants in *Johnson* simply denied committing the alleged act-a claim based solely on evidentiary sufficiency and therefore improperly resolved by an interlocutory appeal. *Johnson*, 515 U.S. at 316–20, 115 S.Ct. at 2158–59. Accordingly, we have jurisdiction to decide this interlocutory appeal.

III. *Merits of Qualified Immunity Decision*

■ To determine whether qualified immunity is appropriate, a court must identify the specific right allegedly violated and determine "whether that right was so clearly established as to alert a reasonable officer to its constitutional parameters;" if the law is clearly established, it determines "whether a reasonable officer could have believed lawful the particular conduct at issue." *V–1 Oil*, 114 F.3d at 857 (quoting *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir.1995)).[2] This test allows ample room for reasonable error on the part of the police officer; it protects " 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)); *see also Duran v. City of Douglas*, 904 F.2d 1372, 1376 (9th Cir.1990).

If a plaintiff fails to allege a violation of a clearly established law, the court need not even reach the other issues presented regarding qualified immunity. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Unsurprisingly, it is clearly established that an arrest without probable cause violates a person's Fourth Amendment rights. *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 706 (9th Cir.1989). It is equally clear that the First Amendment protects a significant amount of criticism against police. *City of Houston v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 2509, 96

2. We have alternatively described our approach as a two-part test or a three-part test. *Compare Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir.1997) (two-part test); *Act Up!/ Portland v. Bagley*, 988 F.2d 868, 871–72 (9th Cir.1993) (same), *with Sweaney v. Ada County, Idaho*, 119

F.3d 1385, 1388 (9th Cir.1997) (three-part test); *V–1 Oil*, 114 F.3d at 857 (same); *Kelley*, 60 F.3d at 666 (same). Regardless of any formalistic difference in description, our approach has been consistent and essentially equivalent.

L.Ed.2d 398 (1987); *Mackinney v. Nielsen,* 69 F.3d 1002, 1007 (9th Cir.1995).

■ Although it is possible in the context of qualified immunity to act "reasonably" but still exceed the bounds of the law, *see Hammer v. Gross,* 932 F.2d 842, 850 (9th Cir. 1991) (en banc), summary judgment based on qualified immunity should be denied if under the plaintiff's version of the facts the officer could not reasonably believe his conduct was lawful, *Curnow,* 952 F.2d at 325. Thus, the relevant question is "whether a reasonable officer could have believed [Knox's] arrest to be lawful, in light of clearly established law and the information the arresting officers possessed." *Kennedy,* 901 F.2d at 706 (quoting other cases).

Defendants claim that they had probable cause to arrest Knox for violating Arizona's trespass statute and its disorderly conduct statute. Resolving all factual disputes and drawing all reasonable inferences in favor of Knox, the nonmoving party, we hold that they did not.

■ First, we conclude that there was a triable issue of fact as to whether the officers had probable cause to arrest Knox for criminal trespass. The Arizona trespass statute makes criminal "knowingly entering or remaining unlawfully on any real property after a reasonable request to leave by the owner or any other person having lawful control over such property." Ariz.Rev.Stat. § 13–1502(A). "Enter or remain unlawfully" means doing so with an intent that is "not licensed, authorized or otherwise privileged." Ariz.Rev.Stat. § 13–1501(1). This statute applies to public as well as private property. *State v. Barr,* 183 Ariz. 434, 904 P.2d 1258, 1262 (App.1995). Not every request to leave public property is necessarily reasonable, however; rather, the lawfulness of continuing presence and the reasonableness of a state employee's request to leave "are issues for the jury to decide in light of the circumstances of each particular case." *Id.* 904 P.2d at 1263.

Defendants claim that when Knox took no action to leave the airport, they honestly believed that he was trespassing. They emphasize that Knox had announced that he would conduct no further business with Southwest in their presence. We cannot find as a matter of law that they based their arrest on his continued presence at the Southwest counter, however. Knox presented sufficient evidence that he had not in fact remained at the Southwest counter, and had only stopped walking away so that he could obtain the officers' identification and badge numbers. Thus, he identified a further piece of "lawful" business at the airport.

Defendants contend that merely demanding an officer's identification cannot insulate an individual from arrest when he disturbs the public peace and refuses an order to leave the premises after his lawful business has been terminated. Their argument fails because Knox was not refusing to leave after completing all lawful business. Knox presented evidence that at least raised a triable issue of fact that he was moving away from the Southwest counter and in the direction of the parking garage on the other side of the terminal. A reasonable factfinder could find that he stopped only as a result of his continuing argument with the allegedly confrontational officers. Knox's arrest took place while he was demanding that the police identify themselves, a legitimate activity. At that point, he was simply attempting to record their identities in writing. A reasonable factfinder could conclude that the demand was not simply a post-arrest attempt to "undo" a trespass but instead that the arrest followed, and may have been triggered by, the demand. Thus, defendants have not shown as a matter of law that they had, or reasonably believed they had, probable cause to arrest Knox for trespassing. His failure to comply immediately with their orders that he leave Terminal 4 altogether through the exit they indicated is insufficient to establish probable cause as a matter of law under these circumstances. The district court correctly concluded that there was a triable issue of fact on this issue.

■ Second, we conclude there is a triable issue of fact regarding probable cause for the arrest on the disorderly conduct ground. The elements of disorderly conduct are knowingly or intentionally disturbing the peace by any of several categories of conduct. Ariz.Rev.Stat. § 13–2904. Defendants have not specified the category under which

Knox's conduct fell, but may have relied on either subsection (2) ("[m]akes unreasonable noise"); subsection (4) ("[m]akes any protracted commotion, utterance or display with the intent to prevent the transaction of the business of a lawful meeting, gathering, or procession"); or, possibly, subsection (3) ("[u]ses abusive or offensive language or gestures to any person present in a manner likely to provoke physical retaliation by such person"). *Id.*

Defendants argue that an arrest for disorderly conduct for cursing at officers is not an unconstitutional violation of the First Amendment, citing *State v. Brahy*, 22 Ariz. App. 524, 529 P.2d 236, 237 (1975), which analyzes an older version of Arizona's disorderly conduct statute in the context of an airport security incident. It is true that "[t]he First Amendment does not prevent enforcement of disorderly conduct statutes so long as they are not vague or applied to curb protected speech." *Duran*, 904 F.2d at 1377 n. 4. In *Duran*, however, we held that the factual issue of whether the police officer's motive for the arrest was a result of the criticism towards him-and thus was applied to curb protected speech-was one that should not be resolved on summary judgment. *Id.* at 1378.

Knox contends specifically that he was not acting in a disorderly manner and implicitly claims the arrest was simply to curb his constitutionally-protected criticism of the officers. Even if his conduct was not entirely deferential and obedient, defendants did not have a reasonable belief as a matter of law that Knox violated the disorderly conduct statute. In contrast, the established facts in *Brahy* show that the arrestee had not only repeatedly yelled at the airport security officers in an unprovoked and out-of-control manner, but in fact spit on one. 529 P.2d at 237. In this case, as in *Duran*, there is a triable issue of fact regarding whether, under Knox's allegations, defendants unreasonably violated clearly established law when they arrested him.

AFFIRMED.