**Henry H. CUNNINGHAM,**
**Plaintiff–Appellee,**

v.

**CITY OF WENATCHEE, Defendant,**

and

**Robert R. Perez, Defendant–Appellant.**

**No. 02–35792.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 2, 2003.

Filed Oct. 3, 2003.

attle, Washington, for the plaintiff-appellee.

Before: LAY,* FERGUSON, and GOULD, Circuit Judges.

## OPINION

LAY, Circuit Judge.

Henry Cunningham brought suit in federal district court alleging Robert Perez, a police officer with the City of Wenatchee, Washington, and other government officials, violated his civil rights during a sex abuse investigation.[1] The district court denied Perez's motion for summary judgment based on qualified immunity. This appeal followed, and we reverse.

### I. *Background*

Cunningham lived in Wenatchee with his wife, Connie, and three of his four children, Jennifer, Sarah, and Jessica. In May 1994, Cunningham's youngest daughter, Jessica, experienced behavioral and drug problems, which led to her stay at Pinecrest Hospital. While receiving treatment, Jessica claimed her father sexually abused her. After hearing Jessica's claim, a Pinecrest employee contacted Child Protective Services (CPS) in Wenatchee. CPS notified the Wenatchee Police Department of Jessica's disclosures.

After Cunningham learned about his daughter's claims, he went to the Wenat-

Patrick McMahon, Carlson, McMahon & Sealby, Wenatchee, Washington, for the defendant-appellant.

Michael Pierson, Riddell Williams, Seattle, Washington; Glenn S. Draper, Se-

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. A factual recounting of the various sexual abuse charges in the City of Wenatchee is summarized in this court's decision in *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir.2001) (en banc).

chee Police Department. Detective Perez gave Cunningham his Miranda rights, and Cunningham signed a valid waiver of those rights. Perez then interrogated him. Cunningham initially claimed he did not sexually abuse Jessica. Perez called Cunningham a liar and said he knew that Cunningham committed the offense. Perez told Cunningham that his daughters would be forced to testify if he refused to confess.

Cunningham, who was taking medication for a bi-polar disorder, asked to call his therapist, but Perez denied the request. Perez told Cunningham that he had put people in the Washington State Penitentiary, but that Cunningham could receive treatment instead of serving time in prison if he confessed. The interrogation lasted for eight hours. Cunningham did not request a break for food or water. Perez, at times, raised his voice, but never yelled or used physical violence. At the end of the interrogation, Cunningham signed a confession admitting to abusing all of his daughters. Perez arrested Cunningham.

After the arrest, Perez interviewed Jennifer and Sarah. Both failed to confirm their father's alleged abuse. Perez also interviewed Mrs. Cunningham, who proclaimed her husband's innocence. Perez did not create a record of these interviews. Perez then interviewed Jessica at Pinecrest. She denied being abused by her father. Perez continued to question her and allegedly told her that she would have to stay at Pinecrest until she disclosed her father's abuse. After a number of hours, Jessica recounted incidents of abuse. Perez then revisited Sarah and Jennifer. Both daughters admitted to being abused by their father and gave Perez a detailed statement. Perez conducted no additional interviews.

Cunningham pled guilty to sexually abusing his daughters. After serving five years in prison, the Washington Court of Appeals vacated his conviction, and the Chelan County Prosecutor dropped all charges. Cunningham then filed a civil rights action under 42 U.S.C. § 1983 against Perez, the City of Wenatchee, and various other state officials who investigated his alleged crimes. He claimed the City and its officials violated his right to be free from self-incrimination, arrested him without probable cause, fabricated the evidence, and concealed exculpatory evidence. Perez filed a motion for summary judgment based on qualified immunity, which the district court denied. Perez now appeals.

## II. *Jurisdiction*

We first address whether we have jurisdiction over Perez's interlocutory appeal. The Supreme Court's decisions in *Behrens v. Pelletier,* 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), and *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), guide our analysis. In *Johnson,* the plaintiff brought suit against police officers for using excessive force during an arrest. The district court denied the officers' motions for summary judgment based on qualified immunity because the pretrial record contained sufficient evidence to show a genuine issue of fact for trial. *Johnson,* 515 U.S. at 308, 115 S.Ct. 2151. The officers immediately appealed the ruling, arguing that the record contained no evidence showing they had assaulted the plaintiff. *Id.* The Seventh Circuit dismissed the appeal for lack of jurisdiction. The Supreme Court affirmed. It held the officers could not bring their interlocutory appeal because the only question before the court of appeals was whether the record was sufficient to show the officers assaulted the plaintiff. *Id.* at 307, 115 S.Ct. 2151. Interlocutory appeals are not available when

the appellate court is required to resolve a "*fact*-related dispute about the pretrial record, namely, whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial." *Id.* The officials must present the appellate court with a legal issue that does not require the court to "consider the correctness of the plaintiff's version of the facts...." *Id.* at 312, 115 S.Ct. 2151(quoting *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

In *Behrens,* the Court faced another interlocutory appeal from the denial of qualified immunity.[2] The Court noted that the rule in *Johnson* does not bar all interlocutory appeals from the denial of qualified immunity simply because the district court found a disputed issue of material fact. *Behrens,* 516 U.S. at 313, 116 S.Ct. 834. The Court stated an appellate court could exercise jurisdiction over a district court order that determined 1) material facts were in dispute, *and* 2) the defendant's alleged conduct violated clearly established law. *Id.* Such an order contrasts with the district court's order in *Johnson,* which determined only the question of sufficiency of the evidence to support the merits of plaintiff's claim. However, the district court in *Behrens* determined that the defendant's conduct violated clearly established law, the officials could bring an interlocutory appeal. *Id.* On appeal, the court of appeals was instructed that it must resolve any factual disputes in favor of the plaintiff and decide the legal question as to whether the official's alleged conduct violated clearly established law. *Id.*[3]

■■■ From *Behrens,* our cases have distilled the following rule for interlocutory appeals from the denial of qualified immunity: We do not have jurisdiction over interlocutory appeals from district court orders that decide only whether there exists sufficient evidence to sustain the material facts shown by the plaintiff. However, we are instructed that we do have jurisdiction from district court orders that decide not only that material facts are in dispute, but also that the defendant's alleged conduct violated the plaintiff's clearly established constitutional rights. When exercising jurisdiction over the latter type of order, we resolve all factual disputes in favor of the plaintiff and look at the purely legal question of whether the defendant's alleged conduct violated the plaintiff's clearly established constitutional rights. *See, e.g., Bingham v. City of Manhattan Beach,* 329 F.3d 723, 725(9th Cir.

---

**2.** The primary issue in *Behrens* was whether the defendant could appeal the denial of his summary judgment motion based on qualified immunity after he had already appealed the denial of his motion to dismiss. *Behrens,* 516 U.S. at 301, 116 S.Ct. 834. The Court ultimately held the defendant could bring his second interlocutory appeal. *Id.* at 311, 116 S.Ct. 834. This holding is not applicable to the present case because this is Perez's first interlocutory appeal. The importance of *Behrens* lies in the third section of the opinion, which determined whether the court of appeals could exercise jurisdiction over the defendant's interlocutory appeal even though the district court found a dispute of material fact.

**3.** The *Behrens* Court ultimately remanded the case back to the court of appeals because the trial court failed to delineate which claims were or were not sufficiently supported with admissible evidence. The Court stated:

> [W]hile the District Court, in denying petitioner's summary judgment motion, did not identify the particular charged conduct that it deemed adequately supported, *Johnson* recognizes that under such circumstances "a court of appeal may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed."

*Id.* at 313, 115 S.Ct. 2151 (quoting *Johnson,* 515 U.S. at 319, 115 S.Ct. 2151).

2003) (noting when facts are disputed, the court must assume the non-moving party's facts are correct); *Jeffers v. Gomez,* 267 F.3d 895, 903 (9th Cir.2001) (exercising jurisdiction over the defendant's interlocutory appeal by crediting all of the plaintiff's facts, leaving only the legal issue to decide); *Schwenk v. Hartford,* 204 F.3d 1187, 1195 (9th Cir.2000) (noting that "we assume the version of the material facts asserted by the non-moving party to be correct" when determining whether the alleged conduct violates clearly established law); *Knox v. Southwest Airlines,* 124 F.3d 1103, 1107 (9th Cir.1997) (exercising jurisdiction even though the district court found disputed issues of material fact).

■ In the present case, the district court ruled that Perez was not entitled to qualified immunity because "there is enough doubt to find that a reasonable state official would not have believed [Perez's] conduct was lawful." The district court made no specific reference to the sufficiency of the evidence or to any dispute of material fact. The district court determined only whether Perez's conduct violated clearly established law. This determination is a legal ruling. *See Armendariz v. Penman,* 75 F.3d 1311, 1317 (9th Cir.1996) (en banc). This court has jurisdiction to review a district court's decision that a defendant's alleged conduct violated clearly established law. *Id. See also Knox,* 124 F.3d at 1107 (exercising jurisdiction to determine "whether a reasonable officer would know that his or her alleged conduct violated clearly established law").

To better understand appellate jurisdiction on an interlocutory appeal involving the defense of qualified immunity, we must examine the underlying principles behind interlocutory appeals from the denial of qualified immunity, which were first set forth in *Mitchell,* and revisited in *Johnson* and *Behrens.* As *Johnson* pointed out,

various courts of appeals have held different views about the immediate appealability of the claims of public officials who assert qualified immunity defenses. Notwithstanding the decisions of *Johnson* and *Behrens,* the courts still seem to be in somewhat disarray as to the proper rules to follow. Our job as an appellate court is not to critique the Supreme Court decisions, but to do our best to interpret them. We note that in *Mitchell,* the Court relies upon the relevant statute granting appellate courts jurisdiction to hear appeals only from "final decisions" of district courts. *See* 28 U.S.C. § 1291. The Court in *Mitchell* finds that a district court's order denying a defendant's motion for summary judgment on the basis of qualified immunity was an immediately appealable "collateral order" under *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Such collateral orders are said to fall within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. 1221. In reviewing summary judgments relating to the defense of qualified immunity, we particularly note that this class of cases would be effectively unreviewable on appeal from a final judgment. This is because the defense of qualified immunity relates not only to immunity from liability, but more importantly from also standing trial. Thus, it is fundamental that in a defense of qualified immunity in order to have the public official relieved from time-consuming pretrial procedures and trial itself, it is important to resolve this issue at an early stage of the litigation.

A fundamental tenet of the collateral order doctrine is that the claim of immunity is conceptually distinct from the merits of the plaintiff's claims. *Mitchell* also provides direction that we need not consider the correctness of the plaintiff's version of the facts or even if the plaintiff's allegations actually state a claim. The legal issue over which the appellate court has jurisdiction is "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions ... [and] whether the law clearly prescribed the actions the defendant claims he took." *Mitchell,* 472 U.S. at 528, 105 S.Ct. 2806. The confusion arises from the language in *Johnson* that where the summary judgment order determines only a question of evidentiary sufficiency then this order, even though entered in a qualified immunity case, is not appealable. In understanding this admonition, it is important to consider the facts of *Johnson* wherein the defendants, who allegedly used excessive force during an investigation, denied they beat the plaintiff and denied they were even present at the time of the beatings. Discovery had taken place in *Johnson* and the district court denied the motion for summary judgment on the ground that there was sufficient circumstantial evidence supporting the plaintiff's theory of the case. In affirming the Seventh Circuit's finding that the appeal lacked jurisdiction, the Supreme Court held that the case lacked separability as to the legal question of qualified immunity and held that the case did not present an abstract issue of law. Thus, where the case involves the sufficiency of the evidence of plaintiff's proof, the mere fact that a defense of qualified immunity is also included does not in itself provide a jurisdictional basis of appeal.

In the subsequent case of *Behrens,* the Court pointed out that once the case reaches the summary judgment stage, the plaintiff can no longer rest on its pleadings under Federal Rule of Civil Procedure 56 and that the court must look to the evidence before it as to whether or not the legal issue can be separated from the merits of plaintiff's claim in resolving the question of qualified immunity. In *Behrens,* the Court pointed out that the defense of qualified immunity can be raised at successive stages of the district court's proceeding. The Court observed:

> Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.

*Behrens,* 516 U.S. at 306, 116 S.Ct. 834 (quoting *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806).

We hold in the present case the facts involved are distinguishable from those in *Johnson.* In following the admonition in *Mitchell,* we assume the facts shown by Cunningham, the nonmoving party, as being true for the purpose of deciding the abstract legal question governing qualified immunity. We also find that the allegations made by Cunningham and the proof adduced by him in the summary judgment proceeding sets apart the legal issue of qualified immunity from the merits of the case. We therefore find that this court has jurisdiction to entertain Perez's appeal from the denial of the motion of summary judgment relating to the qualified immunity defense.

On appeal, we now consider, taking all facts and inferences in favor of Cunningham, whether Perez is entitled to qualified immunity as a matter of law.

### III. *Qualified Immunity*

 We review de novo Perez's qualified immunity claim. *Mena v. City of Simi Valley*, 226 F.3d 1031, 1036 (9th Cir. 2000). Government officials are entitled to immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The analysis begins with this threshold question: "[D]o the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If no constitutional violation is shown, the inquiry ends. *Id.* If, however, a constitutional violation occurred, the second question is "whether the right is clearly established." *Id.* A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. We now evaluate each of Cunningham's claims, determining whether a constitutional violation occurred and, if so, whether a reasonable officer would have acted in the same manner as Perez did.

### A. *Cunningham's Coercive Interrogation Claim*

 Cunningham alleges that Perez violated his Fifth and Fourteenth Amendment rights to be free from coercive interrogation. A coercive interrogation exists when the totality of the circumstances shows that the officer's tactics undermined the suspect's ability to exercise his free will. *Haynes v. Washington*, 373 U.S. 503, 513, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

 Here, we hold Perez's interrogation as demonstrated by the pretrial record did not undermine Cunningham's free will. While it is true that the interrogation lasted for eight hours, Perez did not refuse to give Cunningham a break for food or water. Perez also never yelled and failed to use violence or the threat of violence. Perez's questions may have unsettled Cunningham, but mere emotionalism and confusion do not invalidate confessions. *United States v. Miller*, 984 F.2d 1028, 1032 (9th Cir.1993). Further, continuing to question a suspect after the suspect claims he is innocent does not constitute coercion and is often necessary to achieve the truth. *See Amaya–Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir.1997) (stating officers' repeated insistence that the suspect tell the truth did not amount to coercion). Perez's suggestion that Cunningham's cooperation could lead to treatment rather than prison is also not coercive. *See United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir.1988) (holding an interrogator's promise to recommend leniency does not render a suspect's confession involuntary). Similarly, Perez's statement that he has put people in prison did not contribute to undermining Cunningham's free will. Officers are allowed to recite the sentence a suspect may receive if found guilty. *See United States v. Bautista–Avila*, 6 F.3d 1360, 1365 (9th Cir.1993); *see also United States v. Sablotny*, 21 F.3d 747, 752–53 (7th Cir.1994) (holding officers are allowed to play upon the suspect's fear of prison).

While it is true that Perez denied Cunningham's request to call his therapist, there is no constitutional right to call a therapist during an interrogation. Cunningham also cannot point to his bi-polar medication to invalidate the confession because confessions can be voluntary even if the effects of medication influence a suspect's statements. *United States v. Mar-*

*tin,* 781 F.2d 671, 673–74 (9th Cir.1985). Further, Cunningham's mental disorder cannot invalidate his confession because he has not first shown that Perez used coercive tactics. *See Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

When viewing the totality of the circumstances, Perez's conduct did not undermine Cunningham's free will. Other cases finding coercion have been far more outrageous. *See, e.g., Mincey v. Arizona,* 437 U.S. 385, 398–99, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (finding statement obtained from a defendant who was in the hospital, in near coma condition, and in great pain, while fastened to tubes, needles, and a breathing apparatus, could not have been voluntary); *Haynes,* 373 U.S. at 511–12, 83 S.Ct. 1336 (1963) (invalidating confession where suspect was held for over five days and never advised of his rights); *Ashcraft v. Tennessee,* 322 U.S. 143, 149–54, 64 S.Ct. 921, 88 L.Ed. 1192 (1944) (invalidating confession because police questioned suspect for thirty-six hours straight); *Henry v. Kernan,* 197 F.3d 1021, 1028 (9th Cir.1999) (finding confession was involuntary because detectives admittedly continued the interrogation after the suspect clearly invoked his *Miranda* rights); *California Attorneys for Criminal Justice v. Butts,* 195 F.3d 1039, 1046 (9th Cir.1999) (finding coercive interrogation because the police disregarded the suspect's *Miranda* rights); *United States v. Tingle,* 658 F.2d 1332, 1335–36 (9th Cir.1981) (finding confession involuntary when officer recited a litany of maximum penalties for the suspect's alleged crimes, expressly stated that the suspect would not see her child "for a while," and warned the suspect that if she failed to cooperate he would inform the prosecutor that she was "stubborn or hard-headed").

**B. Cunningham's Probable Cause Claim**

■ Cunningham also claims his arrest violated the Fourth Amendment because it was based solely upon a coerced, illegal confession. We disagree. Probable cause arises when police have knowledge based on reasonably trustworthy information that the person arrested has committed a criminal offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Our holding that Cunningham's confession was not coerced, coupled with Jessica's allegations of abuse, gave Perez probable cause. Thus, Perez did not violate the Fourth Amendment.

**C. Cunningham's Deliberate–Fabrication-of-Evidence Claim**

■ Cunningham next argues Perez violated his right to be free from prosecution based on false evidence. We have held "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey,* 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc). To prevail, Cunningham must show: (1) Perez continued his investigation "despite the fact that[he] knew or should have known that [Cunningham] was innocent; or (2) [Perez] used investigative techniques that were so coercive and abusive that [he] knew or should have known those techniques would yield false information." *Id.* at 1076.

■ First, Cunningham alleges that Perez should have known he was innocent because his confession was coerced and his daughters did not immediately corroborate the confession. We do not agree. Cunningham's confession was legal, and thus it was reasonable for Perez to continue the investigation. Further, the daughters' initial failure to corroborate Cunningham's

confession is not sufficient for Perez to cease the investigation. It is common for sex abuse victims to suppress memories of the assault or deny that it happened. Perez thus did not violate Cunningham's rights by continuing the investigation.

Second, Cunningham alleges that Perez used coercive tactics while interviewing Cunningham's daughters which he knew would yield false information. It is true that Perez kept questioning the daughters after they initially denied the sex abuse. Perez may have also told Jessica that she could not leave Pinecrest until she confessed to the abuse. Perez's conduct, while inappropriate, does not satisfy *Devereaux*. Cunningham must produce more than mere allegations that Perez used improper interview techniques. *Id.* Further, the court gives interviewers of child witnesses suspected of sexual abuse "discretion in deciding when to accept initial denials at face value and when to reject them...." *Id.* at 1077. Accordingly, Perez's interviews were not so coercive and abusive that he knew or should have known that he would receive false information.

### D. Cunningham's Exculpatory Evidence Claim

 Cunningham concludes by arguing that Perez violated the Due Process Clause of the Fourteenth Amendment by failing to preserve and gather exculpatory evidence. A police officer's failure to preserve or collect potential exculpatory evidence does not violate the Due Process Clause unless the officer acted in bad faith. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *Miller v. Vasquez,* 868 F.2d 1116, 1120 (9th Cir.1989). "The presence or absence of bad faith ... turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 57, 109 S.Ct. 333.

 Cunningham claims Perez acted in bad faith because he failed to document his interrogations and did not keep a record of Jennifer and Sarah's statements denying sexual abuse. Perez also failed to gather any physical evidence, such as bed sheets or clothing, which could have exonerated Cunningham. These facts are not specific or compelling enough to show bad faith. *See Jeffers,* 267 F.3d at 907(stating plaintiff must "put forward specific, nonconclusory factual allegations that establish improper motive") (internal quotations omitted). Perez's failure to document his interrogations does not illustrate an improper motive because Perez likely believed his tactics were lawful, a conclusion which we reached earlier in the opinion. Further, Perez's failure to gather any physical evidence does not show bad faith because the value of the untested evidence is speculative. It could have exonerated Cunningham, but it also could have incriminated him. While Perez's investigative work may have been negligent or incomplete, it was not conducted in bad faith. Perez's investigation differs from cases in which the court has found an improper motive. In *Miller v. Vasquez,* 868 F.2d 1116 (9th Cir.1989), for instance, the officer referred to the defendant using an expletive and lied about his knowledge of potential exculpatory evidence. *Id.* at 1121. The officer also tried to dissuade witnesses from testifying in favor of the defendant. *Id.* Perez's alleged conduct did not rise to this level. *Id.* Accordingly, we find Cunningham has not alleged specific, nonconclusory facts showing Perez engaged in "a conscious effort to suppress exculpatory evidence." *California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

### IV. Conclusion

We hold Perez is entitled to summary judgment. His investigation of Cunning-

ham's alleged sex crimes does not amount to a constitutional violation. The judgment of the district court is, therefore, REVERSED.