# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LEONARD MCSHERRY,
        *Plaintiff-Appellant,*

v.

CITY OF LONG BEACH; LONG BEACH
POLICE DEPARTMENT; NORMAN
TURLEY, Officer; CARTHEL S.
ROBERSON, in his individual and
official capacities,
        *Defendants-Appellees.*

No. 06-55837

D.C. No.
CV-02-03767-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
February 14, 2008—Pasadena, California

Filed March 30, 2009

Before: Stephen S. Trott, Richard R. Clifton, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Trott

3805

## COUNSEL

Mark A. Borenstein, Overland Borenstein Scheper & Kim LLP, Los Angeles, California, for the plaintiff-appellant.

Michael M. Mullins and Nowland C. Hong, Akerman Senterfitt LLP, Los Angeles, California, for the defendants-appellees.

## OPINION

TROTT, Circuit Judge:

This case is before us for the second time.[1] In this appeal, Leonard McSherry appeals the district court's order granting summary judgment on the ground of qualified immunity to the City of Long Beach ("City"), Long Beach Police Department ("LBPD"), Officer Norman Turley, and Sergeant Carthel S. Roberson. The allegations in this case stem from a kidnaping, rape, and molestation that occurred in Long Beach, California, in March of 1988. After McSherry served almost fourteen years in prison for these crimes, he was exonerated by DNA evidence and a confession by the actual perpetrator. McSherry then brought this suit, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983.

McSherry argues that Defendants violated his civil rights by: 1) fabricating the victim's descriptions of the interior of

---

[1]The first decision, *McSherry v. City of Long Beach*, ("*McSherry I*"), is reported at 423 F.3d 1015, 1016 (9th Cir. 2005). It reviews in greater detail the facts leading to McSherry's arrest and conviction.

the home where the rape occurred; 2) fabricating the victim's identification of the vehicle used in the kidnaping; 3) coercing the victim's identification of McSherry as the perpetrator; 4) ignoring exculpatory evidence; and 5) arresting McSherry without probable cause. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, vacate in part, and remand.

We conclude that genuine issues of material fact exist as to whether Turley deliberately fabricated evidence. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). Accordingly, we reverse and remand this claim against Turley, but affirm the district court with respect to all other claims against him. Because the district court dismissed the *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978), claim against the City and LBPD only because McSherry did not show a constitutional violation at the hands of Turley or Roberson, and these defendants did not assert any other ground for dismissal on appeal, we vacate and remand the claim. We affirm the district court's grant of summary judgment to Roberson on all claims. We deny McSherry's request for reassignment to a different judge for the reasons we articulated in *McSherry I*.

# I

## BACKGROUND

This appeal comes to us following remand to the district court after we determined that the district correct incorrectly granted judgment as a matter of law to Defendants on the first day of the trial. *McSherry I*, 423 F.3d at 1022. On remand, the district court granted summary judgment to Defendants on the ground of qualified immunity. The district court held that probable cause existed for McSherry's arrest. It further held that the fabrication of the evidence claims against Defendants failed because: 1) McSherry did not present "any evidence that Defendants deliberately fabricated evidence, or acted in

any way that produced false information"; 2) District Attorney Ken Lamb conducted an independent investigation of the evidence; and 3) McSherry "failed to make or support any factual allegations of any fabrication of evidence . . . that were logically capable of supporting" a claim that Turley used unconstitutionally suggestive interview techniques. The district court held also that the *Monell* claim against the City and LBPD failed because McSherry did not show a constitutional violation by either Roberson or Turley.

The issues now before us arise out of the following facts. In March of 1988, the six-year-old victim was kidnaped from a playground on a Navy Base in California. The perpetrator raped and molested her before releasing her several hours later. According to police reports, the victim and her four-year-old brother, a witness to the kidnaping, both provided descriptions of the suspect to the police. Several weeks later, Turley showed both children a photo lineup separately, and both identified McSherry as the perpetrator. Turley's police reports indicate that he showed the victim and her brother photos of cars. Both selected a yellow Mazda station wagon belonging to McSherry's father, identifying it as the vehicle used in the abduction. After McSherry's arrest, an adult witness, Robin Davis, picked McSherry out of a lineup, identifying him as a person she had seen in the area on the day of the kidnaping.

McSherry was arrested for the crime on May 17, 1988. According to police reports, Turley and Roberson interrogated McSherry, and he provided a detailed description of the interior of his grandparents' residence. On May 18, the day after McSherry's arrest, Turley and Navy Investigative Officer Tammy Warmack interviewed the victim to obtain a description of the place she had been taken. Turley's report documenting this interview states that the victim picked McSherry's grandparents' home out of a photo lineup, identifying it as the place McSherry had taken her. The report lists specific details allegedly provided by the victim about the

room where she had been raped, including: descriptions of 1) a picture of the kidnapper on the wall; 2) a small brown television sitting on a gray dresser; 3) a small, possibly twin size bed, with blue sheets and a white blanket; 4) a black chair; and 5) a mirror alongside the door.

On May 19, Turley and Warmack served a search warrant at McSherry's grandparents' house. Turley's subsequent police report states that the victim's description provided on May 18, matched a bedroom in the residence. Furthermore, according to the report, while executing the warrant officers noticed a bird in the livingroom area and a barking dog in the backyard.

On May 24, following the execution of the search warrant, Turley and Warmack re-interviewed the victim to determine if she could provide a more detailed description of the location where she was taken. During that interview, the officers asked if she had heard or seen any animals at the place she was taken. According to Turley's report, the victim said she heard a bird. Turley asked her several other questions regarding the interior of the house, and the victim's responses matched details of the interior of the residence. Specifically, according to Turley, the victim gave the following additional details: 1) the room had one door that folded up and one door that swung open; 2) the mirror was big and round; 3) the picture of the kidnapper was round and hanging on the same wall where the television was located; and 4) the room had a window with a seat.[2]

Turley testified at trial, again attributing the descriptions of the interior of the residence to the victim. Also at trial, the

---

[2]According to Turley's report, although the victim said also that there was a white push button phone in the bedroom, officers only observed a black rotary phone in the room. Turley stated in his report that the investigators believed the victim may have been remembering the phone in the house where the kidnapper released her.

victim and Davis identified McSherry as the perpetrator. Medical evidence indicated that McSherry was a possible donor of the semen taken from the victim's underwear.

Following the trial, McSherry was convicted of the crimes. In December of 2001, nearly fourteen years into his forty-eight-year to life sentence, McSherry was exonerated by DNA evidence. The DNA revealed that George Valdespino had committed the crime. Valdespino later confessed.

## II

## STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment on the ground of qualified immunity. *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007). "We may not affirm a grant of summary judgment if there is any genuine issue of material fact or the district court incorrectly applied the substantive law." *Id.* All justifiable inferences are to be drawn in favor of the non-moving party and his evidence is to be believed. *Id.*

## III

## DISCUSSION

**[1]** "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity is a two-part test. We must determine whether, taken in the light most favorable to McSherry, Defendants' conduct amounted to a constitutional violation, and, if so, we must determine whether or not the right was clearly established at the time of the violation. *Id.* at 201 We may address the prongs in the sequence we see fit. *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 818 (2009).

## A.   Fabrication of Evidence

### 1.   *Turley*

In support of his claim that officers deliberately fabricated evidence, McSherry points in particular to the description of the interior of his grandparents' residence and argues that: 1) he provided Turley a detailed description of his grandparents' house after he was arrested; 2) Turley interviewed the victim the next day, then later documented in his police report and also testified at trial that the victim provided a detailed description of the interior of the residence during that interview; 3) the victim's detailed description differed from her initial description but matched the grandparents' residence; 4) after Turley searched the house, he reported that the victim provided another description with more matching details, 5) fourteen years after she was kidnaped, the victim denied giving the descriptions that Turley documented and testified to; and 6) because McSherry was exonerated of the crimes and another party confessed, the victim obviously was never in the residence and could not have provided such a detailed description.

**[2]** The victim's deposition creates a genuine issue of material fact as to whether Turley fabricated evidence. She denied providing the detailed description of the residence ascribed to her by Turley. Specifically, the victim said she did not tell police there was a picture on the wall because there was not one. She also denied telling the police that there were blue sheets and a white blanket on the bed. When asked whether she had told police that there was a folded up door in the room where she was taken, she said "No. There was no way that a five-year-old can actually remember everything in the house. I mean that's too much for a five-year-old. There's no way. That's too much information in a house for a five-year-old to describe." She denied also telling police that there was a window seat, that she heard a bird, or that there was a circular mirror. That Turley included that information, attributed to

the victim, in his reports means there are genuine issues of material fact as to whether Turley fabricated the descriptions. Credibility is an issue for the trier of fact.

**[3]** As a result, Turley is not entitled to qualified immunity. If the evidence was fabricated, Turley violated McSherry's "clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux*, 263 F.3d at 1074-75. Consequently, we reverse the judgment of the district court as to this claim that Turley deliberately fabricated evidence. At trial, McSherry may support his deliberate fabrication claim with evidence that Turley "used investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information." *Id*. at 1076. McSherry may present direct or circumstantial evidence, including evidence about identifications of McSherry by the victim, the victim's brother, and an adult witness, and identifications of McSherry's father's car by the victim and the victim's brother.

McSherry argues also that Turley is liable for his allegedly false trial testimony regarding the descriptions of the interior of the residence. This claim is foreclosed by *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983) (holding that police officers are immune from liability under 42 U.S.C. § 1983 for perjured testimony).[3]

---

[3]McSherry relies on *Harris v. Roderick*, 126 F.3d 1189, 1198-99 (9th Cir. 1997) for the proposition that Turley is not entitled to immunity because he initiated the prosecution. We do not find this argument persuasive. *Harris* holds that if officers "functionally served as complaining witnesses who may be said to have initiated [the] prosecution they are not entitled to absolute immunity for their false statements." 126 F.3d at 1199. In *Harris*, unlike the case at bar, there were no other complaining witnesses, only the officers. Here, the victim served as the complaining witness.

2. *Roberson*

**[4]** We hold that no genuine issue of material fact exists as to whether Roberson fabricated evidence. There are no police reports by Roberson in the record attributing the allegedly fabricated descriptions of the interior of the residence to the victim. Roberson did not participate in the interviews with the victim, nor did he participate in serving the search warrant at the residence. Furthermore, nothing in the victim's deposition testimony indicates that Roberson attributed fabricated descriptions of the residence to her.

3. *Monell* Claim against the City

**[5]** Under the *Monell* doctrine, McSherry may recover from the City and LBPD if his injury was inflicted pursuant to city policy, regulation, custom, or usage. *See Monell*, 436 U.S. at 690-91, 694. The district court dismissed the claims against the City and LBPD only because McSherry did not show a constitutional violation at the hand of Turley or Roberson, and the City and LBPD did not present any other argument in support of the judgment in favor of the City and LBPD. Based on our determination that there is a genuine issue of material fact as to whether Turley committed a constitutional violation, and because the defendants have not asserted any other ground for dismissal on appeal, we vacate and remand the *Monell* claim against the City and LBPD.

**B.   Exculpatory Evidence**

**[6]** McSherry argues also that Defendants violated the Due Process Clause of the Fourteenth Amendment by ignoring exculpatory evidence. "A police officer's failure to preserve or collect potential exculpatory evidence does not violate the Due Process Clause unless the officer acted in bad faith." *Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003).

**[7]** McSherry claims that Defendants acted in bad faith when they ignored: 1) Valdespino's arrest for a crime similar to the victim's abduction one week later in a nearby county; 2) the fact that initial identification statements by Davis, the victim, and the victim's brother did not resemble McSherry; and 3) the possibility that Davis's identification was influenced by a newspaper photograph of McSherry. These claims fail. First, McSherry does not offer any evidence that in 1988 Defendants knew that Valdespino was arrested in a nearby county for a similar crime. Absent such a showing, there is no evidence of bad faith.

**[8]** Second, as to the descriptions given by the children, Defendants "must be given some latitude in determining when to credit witnesses' denials and when to discount them, and we are not aware of any federal law . . . that indicates precisely where the line must be drawn." *Devereaux*, 263 F.3d at 1075. Defendants do not dispute that McSherry did not resemble the initial descriptions given by the two children, however, nothing in the record shows that Defendants acted in bad faith by relying on the children's photo lineup identification of McSherry rather than their initial descriptions.

**[9]** Third, with respect to Davis' identification of McSherry in a photo lineup, McSherry argues that Davis was shown a photo lineup after McSherry's picture appeared in the paper, implying that she chose him because she recognized him from the newspaper photo. This evidence does not prove bad faith because McSherry must " 'put forward specific, nonconclusory factual allegations' that establish improper motive." *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) (per curiam) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). McSherry does not offer any evidence that Davis ever saw the picture nor that she based her subsequent identification on that picture. Furthermore, because Davis selected McSherry's picture from the lineup, we do not find bad faith on the part of Defendants in relying on this identification rather than her initial description.

## C.  Probable Cause

**[10]** McSherry claims that Defendants had no probable cause to arrest him because they: 1) fabricated evidence; 2) used suggestive interview techniques; 3) manipulated or coerced witnesses; and 4) disregarded exculpatory evidence. "Probable cause arises when an officer has knowledge based on reasonably trustworthy information that the person arrested has committed a criminal offense." *Gausvik v. Perez*, 345 F.3d 813, 818 (9th Cir. 2003) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

**[11]** We have already determined that there are no genuine issues of material fact as to whether Defendants used improper interview techniques or ignored exculpatory evidence. Even if the description of the interior of the residence was fabricated, Defendants had probable cause for the arrest. Here, the victim and her brother identified McSherry as the perpetrator and his father's car as the vehicle used to perpetrate the crime. Medical evidence indicated that semen taken from the victim's underwear could belong to McSherry. We hold that these facts established probable cause for the arrest. *See id.*

## D.   Independent Investigation by District Attorney Lamb

**[12]** Defendants argue that they cannot be held liable for any damages McSherry suffered after the district attorney filed charges against him. We disagree. "[W]here police officers do not act maliciously or with reckless disregard for the rights of an arrested person, they are not liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted." *Smiddy v. Varney*, 665 F.2d 261, 267 (9th Cir. 1981). The presumption may be rebutted if McSherry met his burden of showing that "officers knowingly withheld relevant information with the intent to harm [him],

or that the officers knowingly supplied false information." *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986).

**[13]** In this case, the presumption may be rebutted because, if Turley fabricated evidence regarding the victim's description of the interior of the residence, he knowingly supplied false information to Lamb. We hold that the investigation and filing of charges by District Attorney Lamb does not insulate Defendants from liability.

## IV

## CONCLUSION

Because genuine issues of material fact exist as to whether Turley fabricated evidence, we reverse the grant of summary judgment as to Turley on this claim and vacate and remand the grant of summary judgment on the *Monell* claim against the City and LBPD. We affirm the district court's grant of summary judgment to Roberson on all claims, and to Turley, the City, and LBPD on all remaining claims.

**AFFIRMED** in part, **REVERSED** in part, **VACATED** in part, and **REMANDED**.

The parties shall bear their own costs of this appeal.