FILED

APR 05 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KAY ANNE RILEY,

          Plaintiff - Appellee,

v.

CITY OF PRESCOTT, Arizona, a political
subdivision; et al.,

          Defendants - Appellants.

No. 14-15395

D.C. No. 3:11-cv-08123-JAT

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Argued and Submitted March 14, 2016
San Francisco, California

Before: BYBEE and N.R. SMITH, Circuit Judges and KORMAN,[**] Senior District
Judge.

    Former Prescott, Arizona Mayor, Marlin Kuykendall, filed this interlocutory

appeal seeking reversal of the district court's order, which denied Kuykendall's

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable Edward R. Korman, Senior District Judge for the U.S.
District Court for the Eastern District of New York, sitting by designation.

motion for summary judgment and denied him qualified immunity. We review de novo, *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003), and affirm.

## I

As a threshold issue, to the extent Kuykendall argues that Riley's evidence is insufficient to create material issues of fact as to Kuykendall's involvement in Riley's termination, we lack jurisdiction. "[A]n appellate court lacks jurisdiction over an interlocutory appeal challenging the sufficiency of the evidence supporting the trial court's conclusion that an issue of fact exists." *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001); *see also Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). Where the district court's denial of summary judgment is based both on the existence of triable issues of fact and the lack of qualified immunity, we have jurisdiction only to "resolve all factual disputes in favor of the plaintiff and look at the purely legal question of whether the defendant's alleged conduct violated the plaintiff's clearly established constitutional rights." *Cunningham*, 345 F.3d at 807 (emphasis added). That is what we must do here.

## II

Kuykendall is not entitled to qualified immunity. Qualified immunity is assessed in two steps. First we ask whether the facts (assumed in the plaintiff's

favor) demonstrate a constitutional violation; and second, if so, whether it was "clearly established" at the time that such conduct was unconstitutional. *Cunningham*, 345 F.3d at 810 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

Resolving all factual disputes in Riley's favor, Riley has shown a constitutional violation. *See id.* at 807. First, Riley's protest was on a matter of public concern. It was closely covered by local media and centered on city officials' high-profile (and allegedly retaliatory) treatment, termination, and arrest of a former city employee. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103–05 (9th Cir. 2011) (noting that speech that "bring[s] to light potential or actual discrimination, corruption, or other wrongful conduct by government agencies or officials" when given to a broad audience rather than in private grievance form will make the speech "a matter of public concern"). Second, Riley was not speaking as a part of her job, but rather as a private citizen. *See id.* at 1105–06 (government contractor's employee testifying as an expert was acting as private citizen where it was not a part of his official job duties to do so). And third, Riley's protected speech was a substantial or motivating factor in the adverse employment action. *See id.* at 1106 (plaintiff established this factor where "[s]everal emails . . . viewed in the light most favorable to [the plaintiff], reasonably could support a finding that [the plaintiff] was fired because of" the

3

probation office's concerns over his testimony rather than complaints about the plaintiff's job performance).

Riley has thus shifted the burden to Kuykendall to show that there was "an adequate justification for treating [Riley] differently from other members of the general public" and whether there would have been "adverse employment action even absent the protected speech." *Id.* at 1102–03. Yet Kuykendall has failed to do anything more than dispute the sufficiency of the evidence to permit a jury to rule in Riley's favor on these elements—something we don't have jurisdiction to address. Accordingly, Riley has demonstrated a constitutional violation.

Riley's constitutional rights were clearly established at the time of the violation. As Kuykendall concedes, we denied qualified immunity under similar circumstances in *Clairmont* for events that predated Riley's termination by several years. *See* 632 F.3d at 1101–02, 1109–10. It is also a given that at the time of Riley's termination, it was clearly established that Kuykendall could not have terminated YHS's contract based on *YHS's* speech. *See Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 684 (1996); *Rivero v. City & Cty. of San Francisco*, 316 F.3d 857, 864 (9th Cir. 2002); *Hyland v. Wonder*, 117 F.3d 405 (1997) (*Hyland II*); *Hyland v. Wonder*, 972 F.2d 1129 (9th Cir. 1992) (*Hyland I*). Yet Kuykendall fails to offer any persuasive reason why it would be reasonable for him to nonetheless

4

believe he could cause YHS to fire Riley based on *her* speech.  We hold that her rights were also clearly established at the time.

Our decision in *Clairmont* squarely controls the outcome here.  We therefore **AFFIRM** the district court's denial of summary judgment.