IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 80305-1-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JIMI JAMES HAMILTON, | |
| Respondent. | |

SMITH, J. — Hamilton was charged with second degree assault of a corrections officer while he was incarcerated at Monroe Correctional Complex. Hamilton was convicted after presenting a mental-health defense at trial. Hamilton appealed and we remanded for a new trial. On remand, Hamilton moved to dismiss the case based on the State's failure to preserve surveillance video recordings of Hamilton's interactions from the morning of the assault. The court granted the motion and the State appealed. Because the deleted videos were not materially exculpatory and there is no evidence that the State acted in bad faith in failing to preserve the videos, we reverse and remand for a new trial.

## FACTS

In August 2012, Hamilton was in the custody of the Washington State Department of Corrections as an inmate at the Monroe Correctional Complex. Around 10:00 AM on August 23, Hamilton had a conversation with Correctional Officer Nicholas Trout about filing an emergency grievance. The conversation became heated, and Officer Trout ordered Hamilton to return to his cell.

Citations and pin cites are based on the Westlaw online version of the cited material.

Hamilton began to comply and walk away, but then suddenly turned back and charged at Officer Trout, knocked him on to the floor, and began to punch him in the face.

After the assault, Hamilton told police that he had been feeling anxious about not being able to talk to a supervisor about his emergency grievance. Then, after he turned to walk back to his cell, he thought an inmate was trying to attack him with a knife, and he rushed forward and collided with the person. He told police that the next thing he remembered was someone yelling at him to stop.

Monroe Police Detective Barry Hatch led the investigation of the case and interviewed the defendant and other persons with whom the defendant had contact the morning before the assault. Hatch requested to preserve a portion of the prison's video surveillance, which showed Hamilton's movements and interactions leading up to the assault, the incident itself, and the moments after.

Hamilton was charged with one count of second degree assault. On September 18, 2012, Hamilton's counsel filed a notice of appearance and request for discovery, asking the prosecutor to "provide discovery as required by CrR 4.7(a)." Shortly thereafter, all of the prison's surveillance video from that day—other than the footage of the assault itself—was automatically overwritten as part of the system's routine functioning.

At trial, Hamilton asserted a defense of diminished capacity due to his mental health. In support of his defense, Hamilton testified and presented an expert psychiatric witness, Dr. Stuart Grassian, who testified to his opinion that

2

Hamilton suffered from mental illnesses related to his stay in solitary confinement at the time of the assault.

In October 2014, the jury found Hamilton guilty, and the court sentenced Hamilton to life without the possibility of parole based on his status as a persistent offender. Hamilton appealed, and in October 2016, we reversed his conviction based on improper cross examination of Dr. Grassian. State v. Hamilton, 196 Wn. App. 461, 465, 383 P.3d 1062 (2016). The appeal was mandated in May 2017, and the parties continued trial for several months.

In July 2019, two months before the second trial was set to begin, Hamilton moved to dismiss the assault charge. He contended that the State had violated his due process rights by failing to preserve the videos of his other interactions the morning of the assault. However, he did not attach any evidence to this motion, relying only on a summary of the facts. At the same time, Hamilton moved to suppress records from a search of his medical records. The State responded to the motions and attached the affidavit of probable cause to present the facts of the case. In his reply to the motion to dismiss, Hamilton did not attach any exhibits but did introduce certain evidence in the body of his brief. Specifically, Hamilton's counsel stated that Hamilton's expert had told him that the videos from that morning would have been "immensely helpful" in assessing Hamilton's mental health. To support his claim that the State had acted in bad faith, Hamilton's attorney described an e-mail from the prosecutor to the police department that stated, "This case has been assigned to Laura Twitchell. Go get em!!," and an e-mail between Department of Corrections officials that stated:

> "Per Detective Barry Hatch, handling the Criminal Investigation, the time need[s] to be stated in the narrative. Maybe you had a break in your typical schedule and were off by 5-10 minutes. . . Example: 'I got to work that day at 0730 hours . Approximately 5 minutes later as I began to distribute mail, I saw/heard . . .['] etc.)"

Hamilton's reply to the motion also included a sworn statement that "[t]he conversations and written materials referenced are relayed accurately."

The motions were heard by a different judge who had not presided over the original trial. Nonetheless, although no portions of the trial transcript were in the record before the court, both the State and the court referred to the trial testimony during the hearing.

On July 24, 2019, the court issued a letter ruling discussing the facts and its analysis and concluding that the charges should be dismissed. On August 1, the court entered an order of dismissal and stated that its analysis would be "further memorialized in written findings and conclusions entered at a later date." On August 6, the State appealed the decision to this court.

The trial court did not enter its findings and conclusions until November 15, 2019, and the State did not sign the order, indicating that it had not received notice of the findings. Hamilton filed the findings as supplemental clerk's papers on December 31. The State filed its opening brief on May 21, 2020. Hamilton filed his responding brief on April 13, 2021. Along with his brief, Hamilton moved to transfer reports of proceedings from his previous appeal to this appeal. The commissioner granted Hamilton's motion and we subsequently denied the State's motion to modify the ruling.

ANALYSIS

The State alleges that the court erred by dismissing the case, both because the deleted videos were not material exculpatory evidence and because the State did not exhibit bad faith.  We agree.

Procedural Issues

The parties first raise several threshold procedural issues regarding the scope and standard of our review.  These are addressed in turn.

1.  Consideration of Trial Transcript

The State contends that although we granted Hamilton's motion to transfer the trial report of proceedings, we should not consider this transcript in making our determination because it was not before the trial court.  We agree.

"We do not accept evidence on appeal that was not before the trial court." State v. Curtiss, 161 Wn. App. 673, 703, 250 P.3d 496 (2011); RAP 9.11.  Here, the judge who heard the motion to dismiss did not preside over the 2014 trial. Neither party submitted any portions of the trial transcript in their briefing on the motion to dismiss.  Nor is there any indication that the trial transcript was anywhere in the record before the trial court.  The court did not identify what documents it had reviewed in reaching its decision, except to refer to the affidavit of probable cause and the "defense recitation of facts."  While counsel for the State and for Hamilton both described trial testimony to the court, an assertion by counsel "does not itself constitute competent evidence."  Lemond v. Dep't of Licensing, 143 Wn. App. 797, 807, 180 P.3d 829 (2008).  Because there is no

5

indication that the trial transcript was before the trial court, we may not consider it.

Hamilton disagrees and contends that we should consider the trial transcript because the prosecutor invited the trial court to consider the transcript and the court did so.  Although the prosecutor did encourage the court to look at the testimony from trial and the court made statements about what "the testimony in the record" established, this does not negate the fact that the transcript does not appear to actually have been before the court.  The transcript that Hamilton asks us to consider is in the Court of Appeals file, not the superior court file.  There is a presumption that "the trial judge did not consider inadmissible evidence in rendering the verdict," and there is no evidence in this case that the judge actually did search beyond the record before it to locate and read the trial transcript.  State v. Read, 147 Wn.2d 238, 244, 53 P.3d 26 (2002).  Accordingly, we do not consider the trial transcript on appeal.

2.  Waiver of Challenge to Findings

Hamilton next contends that the State should not be permitted to challenge the trial court's findings because it "accepted the truth of each finding in the trial court."[1]  However, the record does not support Hamilton's assertion.  On the contrary, the State specifically challenged many of Hamilton's factual assertions, disagreeing that "video would have captured [Hamilton] and the interactions" that he had that morning, that any "video of 2-3 hours prior to the

---

[1] Hamilton specifically alleges that the State is barred from challenging the court's findings on the theories that it is judicially estopped, it invited any errors, and it waived its challenge.

assault would have been useful" to Hamilton, that "the police herein acted in bad faith," and that there was no comparable evidence available. Moreover, the court did not enter its findings until three months after the State appealed its order, entered the findings without notice to the State, and included findings that went beyond its original letter ruling.[2] Because Hamilton relies on a mischaracterization of the record, we reject his contention that the State is barred from challenging factual issues.

3. Standard of Review

Generally, "[w]e review findings of fact to determine whether they are supported by 'substantial evidence' and, in turn, whether the findings support the conclusions of law and judgment." State v. Boyer, 200 Wn. App. 7, 13, 401 P.3d 396 (2017) (quoting State v. Macon, 128 Wn.2d 784, 799, 911 P.2d 1004 (1996)). "Substantial evidence is evidence sufficient to persuade a fair minded, rational individual that the finding is true." Boyer, 200 Wn. App. at 13. "We review allegations of constitutional violations de novo." State v. Siers, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012).

The State contends that we should review the court's findings de novo instead of for substantial evidence because the findings were based on documentary evidence and the State was not given notice of the entry of the findings. While the lack of notice to the State would normally require remand for

---

[2] For instance, while the court's letter ruling stated that Detective Hatch anticipated a mental health defense and that he interviewed every staff member who had contact with Hamilton on the morning of the assault, the formal findings specifically stated that Detective Hatch interviewed these staff members *because* he anticipated a mental health defense.

the proper entry of findings, remand in this case is not practicable because the judge who dismissed the case has since passed away. See State v. Nava, 177 Wn. App. 272, 289 n.6, 311 P.3d 83 (2013) (disregarding findings and conclusions entered without notice to appellate counsel and concluding that trial record was adequate for appeal); State v. I.N.A., 9 Wn. App. 2d 422, 427-28, 446 P.3d 175 (2019) (disregarding findings instead of remanding for proper entry because time was of the essence); In re Det. of G.D., 11 Wn. App. 2d 67, 71-72, 450 P.3d 668 (2019) (disregarding findings based on noncompliance with rules of appellate procedure and lack of notice to counsel). Because the trial record is adequate for our review, we disregard the court's findings and review the facts de novo.

<u>Failure To Preserve Evidence</u>

The State claims that the court erred by concluding that the State's failure to preserve video of Hamilton's conversations earlier in the day of the assault violated Hamilton's due process rights. We agree.

"To comport with due process, the prosecution has a duty to disclose material exculpatory evidence to the defense and a related duty to preserve such evidence for use by the defense." State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). However, the State does not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). Accordingly, the State's failure to preserve evidence requires dismissal of the charges in two cases.

First, where the State fails to preserve "material exculpatory evidence," and second, where the destroyed evidence is only "potentially useful" but the State acted in bad faith in failing to preserve it. State v. Armstrong, 188 Wn.2d 333, 344-45, 394 P.3d 373 (2017). The trial court held that dismissal was required under both tests and we address each in turn.

    1.  <u>Whether the Videos were Materially Exculpatory</u>

The State contends that the trial court erred by concluding that the deleted videos were "material exculpatory evidence." We agree.

The Supreme Court has noted that the State's duty to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). To meet this standard for material exculpatory evidence, "the evidence must both possess an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Wittenbarger, 124 Wn.2d at 475. "Exculpate" means "to clear from alleged fault or guilt[, to] prove to be guiltless." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 794 (2002). By contrast, "potentially useful evidence" is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." Youngblood, 488 U.S. at 57.

In Wittenbarger, defendants who were charged with driving while under the influence of intoxicants challenged the State's failure to preserve detailed

inspection, repair, and maintenance records of the breath alcohol analysis machines used to calculate the defendants' blood alcohol content. 124 Wn.2d at 472-74. The defendants presented expert testimony that "*all* records of machine malfunctions and repairs would be useful and should be retained in order to assist the defense in challenging the reliability" of the machines. Wittenbarger, 124 Wn.2d at 474. Nonetheless, the Supreme Court held that the records were "not directly related to the accuracy of a particular breath test. Unlike the breath test ticket, which contains specific information regarding the accuracy of each . . . reading, evidence of past repairs is only tangentially related to whether the machine is properly functioning on a given day." Wittenbarger, 124 Wn.2d at 476. Furthermore, the court noted that the defendants had many alternative means to attack the credibility of the breath tests, including cross examination regarding operator error, expert testimony, and evidence of additional breath or blood tests. Wittenbarger, 124 Wn.2d at 476. Because the documents were "not directly related to the [defendants'] guilt or innocence" and the defendants had alternative means to attack the results, the documents did not constitute "material exculpatory evidence." Wittenbarger, 124 Wn.2d at 488.

Here, there is no evidence indicating that the deleted video was material exculpatory evidence. First, there is no evidence that the surveillance system captured all the interactions Hamilton had that morning, and even if it had, the video had no audio and might not have captured faces or body language clearly, if at all. Even if the video did clearly capture Hamilton's interactions, the video would not be material because as in Wittenbarger, the interactions "are not

directly related to [Hamilton's] guilt or innocence." 124 Wn.2d at 488. Hamilton's defense turned on his claim that he was in a "dissociative state—an altered [state] of consciousness—at the time of the assaultive act." Hamilton, 196 Wn. App. at 467. Even accepting Hamilton's claim that the deleted video would have shown Hamilton "undergoing a mental health episode, anxiety, paranoia, hallucination," this would not establish that Hamilton was in a dissociative state *at the time* of the assault. If a video could show this dissociative state, it would be the video of the assault, which was properly preserved and introduced into evidence.

Furthermore, and again accepting Hamilton's claim that the video would show him "undergoing a mental health episode, anxiety, paranoia, [and] hallucination," Hamilton had reasonable means to obtain evidence of a similar nature. Hamilton acknowledges that witness accounts were available and that many of these referred to Hamilton as being anxious, paranoid, and stressed that morning. Unlike the silent video recordings, these witnesses could describe the content of their conversations with Hamilton and their perception of his mental state. Therefore, as in Wittenbarger, Hamilton had many alternative means to present his defense, including cross examination, expert testimony, additional mental health exams, and video of the actual event during which Hamilton was purportedly in a dissociative state. 124 Wn.2d at 476.

Because the video did not possess an immediately apparent exculpatory value and other comparable evidence was available, it was not material exculpatory evidence.

2. <u>Whether the State Exhibited Bad Faith</u>

The State next contends that if the deleted videos were "potentially useful" evidence, the court erred by concluding that the State showed bad faith in failing to preserve the videos. We agree.

"'The presence or absence of bad faith . . . turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'" <u>Armstrong</u>, 188 Wn.2d at 345 (alterations in original) (quoting <u>Cunningham v. City of Wenatchee</u>, 345 F.3d 802, 812 (9th Cir. 2003)). "A plaintiff must 'put forward specific, nonconclusory factual allegations that establish improper motive.'" <u>Armstrong</u>, 188 Wn.2d at 345 (quoting <u>Cunningham</u>, 345 F.3d at 812). It is not enough to show that an investigation was incomplete or conducted negligently. <u>Armstrong</u>, 188 Wn.2d at 346. If the State dealt with the evidence in compliance with an established policy, the State acted in good faith. <u>Armstrong</u>, 188 Wn.2d at 345. The requirement that the defendant show bad faith confines the application of this rule to "cases where the interest of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." <u>Youngblood</u>, 488 U.S. at 58.

Here, there is no evidence in the record suggesting that the State knew that the videos of Hamilton's interactions from that morning would be exculpatory. The mere fact that Detective Hatch interviewed people with whom Hamilton interacted does not indicate that he thought videos of those interactions would be useful for Hamilton's case. Indeed, there is no evidence that Detective

Hatch's motivation in interviewing those individuals went beyond conducting a thorough investigation. Hatch's affidavit for a search warrant, which Hamilton submitted as evidence for his contemporaneously filed motion to suppress, indicates only that "numerous inmates witnessed the event. Several of those witnesses corroborate the events." Although Detective Hatch was aware of Hamilton's claims about his mental health and many months later requested a search warrant for Hamilton's medical and psychological records, there is no indication that he thought the videos of Hamilton's conversations would be relevant to a mental health defense. Hamilton has failed to put forward specific allegations that establish improper motive and has only, at worst, alleged an incomplete investigation. This is not sufficient to establish bad faith. Armstrong, 188 Wn.2d at 345-46.

Hamilton contends that the e-mails he submitted, including the encouragement from the prosecutor to "go get em!" and the e-mail encouraging a corrections officer to be precise about the time descriptions in his report, exhibited a lack of objectivity that constituted bad faith. Even if we were to read these e-mails as exhibiting a lack of objectivity in the investigation, the presence of bad faith turns on the State's knowledge of the exculpatory value of the evidence. Armstrong, 188 Wn.2d at 345. The e-mails do not mention the videos and have no bearing on this inquiry.

Finally, Hamilton contends that the State's failure to preserve the videos following the defense's discovery request establishes bad faith. However, the discovery request did not identify any specific material for the State to preserve,

13

but requested only "discovery as required by CrR 4.7(a)." CrR 4.7(a) requires the State to disclose "any electronic surveillance . . . of the defendant's premises or conversations to which the defendant was a party" that is "within the knowledge, possession, and control of members of the prosecuting attorney's staff." CrR 4.7(a)(2)(i), (a)(4). CrR 4.7(a) does not address material held by others, which the prosecutor must attempt to make available if the defendant specifically requests and designates such material pursuant to CrR 4.7(d). Accordingly, even reading the discovery request broadly, it did not ask the prosecutor to preserve the surveillance videos from earlier in the morning because they were not in the prosecutor's control at that time. If Hamilton had made a specific request for the specific videos from that morning under CrR 4.7(d) and the State had intentionally ignored it, this would be more indicative of improper motive on the State's part. As it is, there is no evidence establishing bad faith on the part of the State.

Because the surveillance videos were not material exculpatory evidence and there is no evidence that the State acted in bad faith in permitting the videos to be erased, we conclude that the State did not violate Hamilton's due process rights.

We reverse and remand for a new trial.

_____

WE CONCUR:

_____       _____